UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD LANGILL and TRICIA LANGILL,<br><br>                              Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY OF CALIFORNIA, and DOES 1 through 10, inclusive,<br><br>                              Defendants. | Case No: 3:20-cv-000176-LAB-DEB<br><br>**ORDER:**<br><br>  (1) **GRANTING PLAINTIFFS' MOTION TO SEAL [DKT. 41];**<br><br>  (2) **DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. 44]; AND**<br><br>  (3) **GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT [DKT. 43].** |

Plaintiffs Edward and Tricia Langill (collectively, the "Langills") are the owners of a condominium located in Coronado, California. When their back deck was damaged by a water leak, their Homeowner's Association ("HOA") hired a repair company to fix the damage. The HOA also hired another company to remove asbestos they discovered in the walls surrounding the deck. But when the

condominium's interior was contaminated with asbestos after the removal company transported the debris through it, the Langills' tenants, who were occupying the condominium at the time, filed a lawsuit against them. The Langills first hired a defense attorney to defend them, and then later tendered a claim with their insurance company, Defendant Allstate Insurance Company ("Allstate"). Allstate opened a claim and assumed coverage for the third-party lawsuit, but refused to pay for the Langills' pre-tender defense fees.

The Langills filed this suit against Allstate for claims related to Allstate's refusal to cover their defense costs. The parties now move for summary judgment on the Langills' claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Allstate also moves for summary judgment on Plaintiffs' request for punitive damages. For the reasons discussed herein, the Langills' Motion is **DENIED** and Allstate's Motion is **GRANTED**.

**I.   FACTUAL BACKGROUND**[1]

**A. The Policy**

In 2015, the Langills purchased a condominium located at 46 Antigua Court in Coronado, California ("Property"), for which they purchased a homeowner's insurance policy ("Policy") from Allstate. (Dkt. 1-2, First Amended Complaint ("FAC") ¶ 6). The Policy states, in relevant part:

> Subject to the terms, conditions and limitations of this

---

[1] Allstate objects to various evidence offered by the Langills in support of their Motion. (Dkt. 48-1, 48-2, and 53-2). Most, if not all, of the evidentiary objections pertain to underlying exhibits or characterizations made in the Langills' proffered declarations. Allstate's objections are **OVERRULED** as moot because the Court doesn't rely on the objected-to evidence in ruling on the instant Motions. And to the extent the objections overlap with any of the statements made in the parties' respective joint statements of undisputed fact, those statements were waived by the parties' joint signatures on the statements, and Allstate's objections are thus **OVERRULED**.

> policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence, to which this policy applies, and is covered by this part of the policy.

(Dkt. 43-2, Defendant's Joint Statement of Undisputed Facts ("Def.'s JSUF") ¶ 2).[2] It also states:

> We do not cover any bodily injury which results in any matter from the discharge, dispersal, release, or escape of . . . toxic chemicals, . . . toxic solids, waste materials or other irritants, contaminants or pollutants. We do cover bodily injury which results from such discharge if the discharge is sudden and accidental.

(Dkt. 44-1, Plaintiffs' Joint Statement of Undisputed Facts ("Pls.' JSUF") ¶ 1). The Policy additionally provides that Allstate "will provide a defense with counsel of [its] choice" if "an insured person is sued for these damages," but the insured must "promptly send [Allstate] any legal papers relating to the accident." (Def.'s JSUF ¶¶ 3–4).

### B. Damage to the Property

In December 2016, the Langills learned of a water leak in the back of their Property, (Pls.' JSUF") ¶¶ 2–3), and that their HOA would need to repair the ensuing damage to their back deck (Def.'s JSUF ¶ 8). This repair work began in January 2017, and the tenants who were occupying the Property, Steve and Yukari Trubow (collectively, the "Trubows"), moved out while the repairs were being performed. (Pls.' JSUF ¶ 4; Def.'s JSUF ¶ 9). In addition, the HOA hired an asbestos removal company, JJ&S Asbestos ("JJ&S"), to demolish and remove

---

[2] In violation of the Court's Civil Standing Order, the parties each submit a separate joint statement of undisputed facts in support of their respective motions for summary judgment. For purposes of the Court's analysis, and despite the parties' failure to comply, the Court will consider both parties' joint statements.

some of the surrounding stucco walls which contained asbestos fibers. (Pls.' JSUF ¶ 4). However, during this asbestos removal process, JJ&S staged its removal equipment in the interior of the Property and carried the stucco debris from the back of the Property through its interior and out the front door. (*Id.* ¶ 6). Later testing revealed that the interior Property had been contaminated with asbestos fibers. (*Id.* ¶ 5).

On January 20, 2017, after the Trubows' discovery that the interior of the Property had been contaminated with asbestos, Mr. Trubow left Mrs. Langill a voicemail regarding his concerns about the health dangers associated with any level of asbestos exposure, stating, "I am really going to go to a lawyer now. I am very, very concerned." (*Id* ¶ 11). The next day, Mr. Trubow sent an email to Mrs. Langill, copying his attorney, Kenneth Gross, restating his concerns that any level of asbestos exposure is unsafe and providing links to online articles supporting these safety concerns. (*Id.* ¶¶ 12–14).

### C. Allstate Insurance Claim

On January 20, 2017, the Langills called their Allstate insurance agent, Jordie Fuller, who submitted a claim on their behalf for the damage to their deck. (*Id.* ¶¶ 15–16). The claim was later assigned to a property claims adjustor, named Sandra Mendoza, who spoke with Mrs. Langill on January 24, 2017. (*Id.* ¶¶ 21–23). In her written notes from that call, Ms. Mendoza wrote that the "rot [on the deck] has been going on long before [Mrs. Langill] purch[ased] the home in May 2015," and that "asbestos is definitely outside on the stucco," forcing "the tenant [ ] to move out" even though "he paid 6 months upfront before he moved in." (*Id.* ¶ 24). Ms. Mendoza also noted that the "HOA told [the] tenant he needed to move out," but that Mrs. Langill "does not know what the unliveable situation is." (*Id.* ¶ 24). Ms. Mendoza did not open a bodily injury claim for the Langills at the time. (*Id.* ¶ 25).

On February 15, 2017, Allstate denied the Langills' property damage claim

based on a Policy exception relating to pre-existing, long-term deterioration to the Property. (*Id.* ¶ 29; Def.'s JSUF ¶ 13–14). Allstate's denial letter stated: "If you believe this claim has been wrongfully denied or rejected, in whole or part, you may contact the California Department of Insurance." (Def.'s JSUF ¶ 15). The Langills didn't file a complaint against Allstate with the California Department of Insurance. (*Id.* ¶ 17).

### D. Trubow Lawsuit

On April 7, 2017, Mrs. Langill called her insurance agent to discuss potential claims filed by the Trubows against the Langills. (*Id.* ¶ 18; Pls.' JSUF ¶ 55). Mrs. Langill informed Mr. Fuller that "her attorney feels [the Langills] may get named in a suit regarding the asbestos abatement issue." (Def.'s JSUF ¶ 18). The Langills were indeed sued by the Trubows on May 15, 2017, and later served with the complaint on May 23, 2017. (*Id.* ¶¶ 19–20). On July 20, 2018, the Langills informed Mr. Fuller that they were sued ("July 2018 Tender"). (*Id.* ¶¶ 21–28). Mr. Fuller asked them to send him a copy of the complaint, which they did. (*Id.* ¶ 22). Following the July 2018 Tender, Allstate opened a claim, retained defense counsel to represent the Langills, and ultimately settled the Trubow lawsuit on the Langills' behalf. (*Id.* ¶ 24; Pl.'s JSUF ¶ 62).

### E. Present Lawsuit Against Allstate

On July 1, 2019, the Langills filed a complaint against Allstate for claims of breach of contract and breach of the implied covenant of good faith and fair dealing in Superior Court for the County of San Diego. (Dkt. 1-2). The Langills requested general damages, attorneys' fees and litigation costs, pre-judgment interest, and punitive damages. (*Id.* at 9). Allstate removed the state court action to the Southern District of California. (Dkt. 1). After engaging in discovery, the parties filed the instant motions for summary judgment. (Dkt. 43, 44).

## II.  MOTION TO SEAL

In support of their Motion for Partial Summary Judgment, the Langills have

filed a motion for leave to file documents under seal. (Dkt. 41).

There is a strong underlying presumption that the public will have access to any document filed with the Court. *See Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). The standard for sealing documents in support of briefing on a dispositive motion is high, and requires a showing that "compelling reasons" support a need for secrecy. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). If the request is granted, the Court's sealing order must weigh the competing interests and articulate the factual basis for its ruling without relying on hypothesis or conjecture, and the order must be narrowly tailored. *Id*. at 1179; *Press-Enterprise Co. v. Super. Ct.*, 478 U.S. 1, 13–14 (1986).

The only reason the motion gives for sealing is that the protective order entered in this case requires it. (Dkt. 42 ¶ 3). But the protective order was issued pursuant to the parties' joint motion and doesn't include enough analysis to show that the high standard is met for sealing documents filed in support of briefing on a dispositive motion. Nevertheless, because the Court hasn't considered the information contained in the relevant documents for purposes of its analysis of the parties' summary judgment motions, nor has the Court relied on them in rendering its ruling, the public access concern is minimal under the circumstances. Thus, the Langills' motion to seal is **GRANTED**.

### III.   MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

Summary judgment is appropriate under Rule 56(a) where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once

the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* at 324.

The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986). On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 242.

The Court does not make credibility determinations or weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, the Court determines whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

**B. Breach of Contract Claim**

Both Allstate and the Langills move for summary judgment on the Langills' claim for breach of contract. The parties don't appear to dispute that the claims asserted in the Trubow lawsuit were covered under the Langills' Policy with Allstate. However, the parties do dispute whether Allstate had a duty to defend; when the Langills tendered their defense to Allstate; and whether Allstate failed to investigate the Langills' asbestos-related claims.

An insurer's "duty to defend arises when the insured tenders defense of the third party lawsuit to the insurer." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 886, 959 P.2d 265 (1998). "[W]hen a suit against an insured alleges a claim that potentially or even possibly could subject the insured to liability

for covered damages, an insurer must defend unless and until the insurer can demonstrate, by reference to undisputed facts, that the claim cannot be covered." *Borg v. Transamerica Ins. Co.,* 47 Cal. App. 4th 448, 455, 54 Cal. Rptr. 2d 811 (1996). The duty to defend is determined from the policy, the complaint, and all facts known to the insurer. *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 300, 861 P.2d 1153 (1993). To prevail on a duty to defend claim, an insured need only show that the underlying claim may fall within policy coverage, while insurers must prove that the underlying claim cannot fall within policy coverage. *Ameron Int. Corp. v. Ins. Co. of State of Pennsylvania*, 50 Cal. 4th 1370, 1378 (2010).

       The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded or until it has been shown that there is *no* potential for coverage. *Montrose Chemical Corp.,* 6 Cal. 4th at 300. An insurer need not have actual notice of claims triggering the duty to defend. *California Shoppers v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 37 (1985). Rather, constructive notice of such claims is sufficient to trigger the duty. *Id.* Notice of the summons or complaint of the underlying action may suffice as constructive notice. *OneBeacon Am. Ins. Co. v. Fireman's Fund Ins. Co.*, 175 Cal. App. 4th 183, 200, 95 Cal. Rptr. 3d 808 (2009). Crucially, the insured must make a "showing of potential for coverage" to trigger the duty. *The Hous. Grp. v. PMA Capital Ins. Co.*, 193 Cal. App. 4th 1150, 1156, 123 Cal. Rptr. 3d 603 (2011). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *The Upper Deck Co., LLC v. Fed. Ins. Co.*, 358 F.3d 608, 612 (9th Cir. 2004) (citation omitted).

       Allstate doesn't appear to challenge that it would have owed the Langills a duty to defend had they promptly tendered a defense to it when they were served with the Trubow lawsuit. Instead, Allstate argues that any duty it had is triggered only by the Langills' tender, and that any fees incurred prior to the date of tender are not covered under the Policy. Although the Langills were sued by the Trubows

in May 2017, Allstate maintains that the Langills didn't tender their claim for the Trubow lawsuit until July 2018, over a year later. (Dkt. 43-1 at 4). Allstate acknowledges that the Langills had previously communicated to Allstate's agents their concerns about the Trubows' potential asbestos-related claims, but argues that the Langills didn't send the Trubow complaint or request coverage from Allstate until Mrs. Langill called her Allstate agent in June 2018 and sent him the complaint. (Dkt. 48 at 8–9).

The Langills instead suggest they "repeatedly" provided Allstate with actual notice—or, at least, constructive notice—prior to July 2018, including back in January 2017 when the Langills first called Allstate about a claim for damage to their back deck and they mentioned that the asbestos on the Property was a concern for their tenant, as well as in April 2017 when Mrs. Langill called Allstate and reported "that she may be sued as a result of the asbestos contamination issue." (Dkt. 44-1 at 14–15). The Langills also vaguely allude to "several conversations" they had with their Allstate agent between May 2017 and July 2018, after they'd been served with the Trubow complaint, but they concede that these conversations were about "other insurance issues" and never suggest that they attempted to tender a claim at any point during these conversations. (Dkt. 44-4, Declaration of Tricia Langill ("T. Langill Decl.") ¶ 20). The Langills even admit that the first time they ever sent Allstate a copy of the Trubow complaint was in July 2018. Mrs. Langill admits:

> Q: Okay. In July of 2018, [Jordie Fuller] instructed you to send him a copy [of the Trubow lawsuit], though; right?
> A: Well, somebody instructed me, yes.
> Q: Okay. Did he ever tell you that Allstate denied coverage for the Trubow lawsuit at any time?
> A: Not that I'm aware of.
> Q: Did you ever ask Allstate for coverage for the Trubow lawsuit any time prior to July of 2018?
> A: Not that I recall.
> Q: Okay. So you never instructed Jordie Fuller prior to July

> 2018 to submit a claim to Allstate on your behalf for the Trubow lawsuit; correct?
> A: Correct.

(Dkt. 43-10 at 138:20–139:1).

The Langills next contend that even if Allstate didn't have actual notice of the Trubow lawsuit, the notice requirement was waived because Allstate previously denied the Langills insurance coverage in February 2017. But this argument is directly contradicted by the record. Mrs. Langill admits in her deposition that the claim she made in January 2017, and which was denied in February 2017, was only related to the damage to her back deck, and not about anything relating to asbestos. (Dkt. 48-8 at 62:4–7 ("Q: So did you think that your claim that you submitted, Claim No. 0443331038, had anything to do with anything other than a water leak on your deck? A: No.")).

The Court finds that, at a minimum, notice of the Trubow lawsuit could not have been given to Allstate prior to May 2017 because the lawsuit didn't even exist before that time. The Trubows may have complained about safety issues, expressed their concerns related to asbestos contamination, and threatened to sue, but they didn't actually file the lawsuit until May 2017. Before that, no claim existed for Allstate to defend, and therefore, their duty couldn't have been triggered before that time. The Langills point to no authority to suggest otherwise, and the Court is likewise unable to identify any case that proposes such an overbroad interpretation of the established tender rule. *Cf. Foster-Gardner, Inc.*, 18 Cal. 4th at 886 ("Prior to the filing of a complaint, there is nothing for the insured *to tender defense of*, and hence no duty to defend arises.") (emphasis in original); *Montrose Chem. Corp*, 6 Cal. 4th at 295 ("The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the [third-party] complaint with the terms of the policy.") (citations and internal quotation marks omitted). Nor is it plausible to suggest that Allstate had a

continuing duty to investigate potential coverage before it had even found out about the lawsuit. *Cf. Daniels v. Allstate Ins. Co.*, No. 14-CV-00824-LHK, 2014 WL 4954826, at *6 (N.D. Cal. Oct. 1, 2014) ("Defendant satisfied its obligation to investigate Plaintiffs' claim by comparing the terms of the Policy with the underlying complaint filed by the Kennedys, taking into account all extrinsic facts provided by Plaintiffs. Under California law, the duty of the insurer is fully discharged by review of the underlying complaint and the insurance policy."); *Baroco W., Inc. v. Scottsdale Ins. Co.*, 110 Cal. App. 4th 96, 103, 1 Cal. Rptr. 3d 464, 469 (2003) ("After receiving a tender of defense, the insurer satisfies its duty to investigate by considering the complaint and the terms of the policy.").

And even after the Trubow lawsuit was filed, the Langills concede that they didn't request that their claim be covered until they spoke to their Allstate agent in July 2018 and sent him a copy of the complaint. Thus, Allstate's duty to defend was not triggered until the Langills tendered their claim in July 2018. *See Czerwinski v. Scottsdale Ins. Co.*, No. CV 17-4408 PA (MRWX), 2017 WL 8116235, at *6 (C.D. Cal. Sept. 11, 2017) ("Contrary to Plaintiffs' suggestion that the insurers' constructive notice of the existence of the Cross-Complaint was sufficient to trigger the insurers' duties to defend them, the duty to defend is triggered by tender of the claim by the insureds to the insurer."); *Larkin v. ITT Hartford*, No. C 96-1575 CRB, 1999 WL 459351, at *8 (N.D. Cal. June 29, 1999) ("The duty to defend arises upon the insured's tender of a claim. Plaintiffs have not cited any case, and the Court is aware of none, in which the duty to defend was triggered by the insurer's learning of a claim against the insured even though the insured never attempted to tender the claim. Such a holding would place the burden on the insurer to inquire if the insured wants a defense anytime the insurer learns of a possible claim against the insured. The Court declines to create such a burden."); *Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 58, 948 P.2d 909 (1997) ("[The duty to defend] arises as soon as tender is made, before liability

is established and apart therefrom. It is discharged when the action is concluded.").

The Langills now seek recovery of the attorney's fees they incurred to defend the Trubow lawsuit during the intervening year between the commencement of the Trubow lawsuit and their July 2018 tender. Allstate agues that their recovery is foreclosed by the express language in the Policy which prohibits an insured person from making any voluntary payments. (Dkt. 48 at 6–7). The Langills respond that Allstate's prior denial of coverage in February 2017 resulted in "the insurer's forfeiture of its right to control the defense of the action or settlement." (Dkt. 52 at 11). But as explained previously, the evidence establishes that the February 2017 denial of coverage was related to damage to the Langills' back deck and didn't have anything to do with asbestos-related claims. That the asbestos issue may have been discussed with Allstate agents around that time is irrelevant where the claim itself was made specifically in relation to the rot and deterioration of the back deck.

For the reasons stated above, the Court finds that Allstate did not breach the Policy. Allstate's Motion for Summary Judgment as to the first cause of action is **GRANTED**.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing.

"[T]he covenant of good faith and fair dealing is implied in every contract, the breach of which is a tort." *Hubka v. Paul Revere Life Ins. Co.,* 215 F. Supp. 2d 1089, 1092 (S.D. Cal. 2002) (citations omitted). "In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir. 2001). The covenant "has 'particular application' to insurers because they are 'invested with a discretionary power affecting the rights of another,' and the insurance business is 'affected with a public interest and offers services of a quasi-public nature[.]'" *Amadeo v. Principal Mutual*

*Life Ins. Co.,* 290 F.3d 1152, 1161 (9th Cir. 2002) (citations omitted).

    Although the issue of reasonableness "is ordinarily a question of fact," *Highlands Ins. Co. v. Continental Casualty Co.,* 64 F.3d 514, 517 (9th Cir. 1995) (citing *Walbrook Ins. v. Liberty Mut. Ins.,* 5 Cal.App.4th 1445, 1454, 7 Cal. Rptr. 2d 513 (1992)), Allstate argues that it is entitled to judgment on this issue under the genuine issue, or genuine dispute as to coverage, doctrine. This doctrine allows a court to "conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability." *Guebara,* 237 F.3d at 992 (quoting *Lunsford v. Am. Guar. & Liab. Ins. Co.,* 18 F.3d 653, 656 (9th Cir.1994)). It allows a court to treat reasonableness as a question of law if there is a genuine dispute as to coverage. *See Feldman v. Allstate Insurance Company* 322 F.3d 660, 669 (9th Cir.), *cert. denied,* 540 U.S. 875 (2003) ("Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was 'a genuine dispute as to coverage.'") (citation omitted). But "where the insurer's position is maintained in good faith and on reasonable grounds," there is no breach of the implied covenant even if the insurer's interpretation of the contract is erroneous. *Wilson v. 21st Century Ins. Co.,* 42 Cal. 4th 713, 723–24, 171 P.3d 1082, 1089 (2007); *see also Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.,* 90 Cal. App. 4th 335, 337, 108 Cal. Rptr. 2d 776 (2001) ("The mistaken or erroneous withholding of policy benefits, if reasonable or based on a legitimate dispute as to the insurer's liability under California law, does not expose the insurer to bad faith liability.").

    Here, Allstate claims there is a genuine dispute among the parties concerning (1) when the claim for coverage of the Trubow lawsuit was tendered; (2) whether Allstate denied coverage for the asbestos claim in February 2017; and (3) whether Allstate is obligated to provide coverage before July 2018. (Dkt. 43-1 at 11). Because there is a genuine dispute over these issues, Allstate argues, there

can be no finding of bad faith. The Langills, on the other hand, argue that Allstate's failure to defend them in the Trubow lawsuit was unreasonable and in bad faith because although Allstate was made aware of the Trubows' asbestos claim before July 2018, it failed to properly investigate the claim. (Dkt. 44-1 at 18). They contend that Allstate's "lack of investigation was not simply bad judgment or inexperience," rather "it was a product of Allstate's failure to implement procedures for its adjusters as to the handling of claims under its policies." (*Id.* at 20). The court is not persuaded by this argument, nor does the evidence support such a conclusion.

Although an insurer's failure to conduct a thorough investigation is one of the situations where the question of whether there is a genuine coverage dispute could remain a factual question for the jury, such is not the situation here. *See Chateau Chamberay Homeowners Ass'n*, 348, 108 Cal. Rptr. 2d 776. As discussed previously, the evidence indicates that the Langills were served with the Trubow lawsuit in May 2017, but they didn't inform Allstate of the lawsuit until over a year later in July 2018. The Langills themselves admitted in their deposition testimony that the initial claim they submitted to Allstate in January 2017 was related only to the property damage to their back deck. Given that the Langills weren't even sued until May 2017, and they didn't tender their claim until July 2018, the Langills cannot plausibly argue that Allstate failed to investigate or take any action. *See Globe Indem. Co. v. Superior Ct.*, 6 Cal. App. 4th 725, 731, 8 Cal. Rptr. 2d 251, 255 (1992) ("The contractual duty to pay policy proceeds did not arise until plaintiffs provided the information necessary to allow [the insurer] to determine whether the accident on the stolen motorcycle was covered under the terms of the policy."). And the evidence indicates that upon the July 2018 tender, Allstate acted reasonably in assuming coverage of the claims. At the very least, under these circumstances, Allstate has demonstrated that there are triable issues of fact, thus barring any bad faith claim. Allstate's motion for summary judgment as to the second cause of action is **GRANTED**.

### D. Punitive Damages

Finally, Allstate moves for summary judgment on the Langills' claim for punitive damages. At the summary judgment stage, the Court must examine a request for punitive damages under the "clear and convincing" standard. *California v. Altus Fin. S.A.*, 540 F.3d 992, 1000 (9th Cir. 2008). According to California Civil Code § 3294, a plaintiff may only recover punitive damages under this heightened standard if the plaintiff can demonstrate that "the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Even proving bad faith, without more, doesn't establish the requisite evidence for a punitive damages claim. *Beck v. State Farm Mut. Auto Ins. Co.*, 54 Cal. App. 3d 347, 355–56, 126 Cal. Rptr. 602 (1976) (holding that "[p]roof of a violation of the duty of good faith and fair dealing does not establish that the defendant acted with the requisite intent" for a punitive damages award). However, "a plaintiff may meet the state of mind requirement for an award of punitive damages by showing that the insurer's bad faith was 'part of a conscious course of conduct, firmly grounded in established company policy.'" *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, –65 (9th Cir. 2002) (quoting *Neal v. Farmers Ins. Exch.,* 21 Cal.3d 910, 148 Cal. Rptr. 389, 582 P.2d 980, 987 (1978)).

Allstate argues that there is no evidence, much less clear and convincing evidence, that it perpetrated any fraud, oppression, or malice, and its mere refusal to provide a pre-tender defense is insufficient to meet this standard. (Dkt. 43-1 at 11; Dkt. 53 at 9). In response, the Langills argue that Allstate's "tortious conduct cannot be considered anything but oppressive" because Allstate was put on notice of the Trubows' claim prior to the July 2018 tender and yet was deliberately indifferent to the Langills' claims. (Dkt. 52 at 20). They further argue that Allstate had a clear profit motive in denying them coverage because Allstate has a bonus structure that encourages the denial of benefits under its policies. (*Id.* at 21).

The California Code of Civil Procedure defines "malice" as "conduct which is

intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). The Code also defines "oppression" as "despicable conduct that subjects a person to cruel and unusual hardship in conscious disregard of that person's rights." "Despicable conduct," in turn, is defined as conduct "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Stewart v. Truck Ins. Exch.*, 17 Cal. App. 4th 468, 483, 21 Cal. Rptr. 2d 338 (1993) (internal citations and quotation marks omitted).

Viewing the evidence in the light most favorable to the plaintiffs, the Court finds that the Langills have not provided evidence that would allow a jury to find, by clear and convincing evidence, that Allstate engaged in any such malicious or oppressive conduct, as they claim. Even if a jury could find that Allstate's actions were unreasonable and in bad faith, there was nothing done here that rises to the level of "despicable conduct." *See Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1288, 31 Cal. Rptr. 2d 433, 445 (1994) ("There was nothing done, however, which could be described as evil, criminal, recklessly indifferent to the rights of the insured, or with a vexatious intention to injure."). Indeed, the record demonstrates that when the Langills informed their Allstate agent that the Trubows were threatening to sue them, they were told to notify Allstate when the lawsuit was eventually filed. But the Langills didn't do that for over a year after they were served with the complaint. And yet, upon finally being notified of the Trubow lawsuit, Allstate diligently opened a claim, retained counsel to represent the Langills, and ultimately settled the Trubow lawsuit on the Langills' behalf. (Def.'s JSUF ¶ 24; Pl.'s JSUF ¶ 62). The Langills' contentions that they repeatedly asked Allstate to help defend them and that Allstate's actions were part of a company-wide policy to deny claims are simply not supported by the record before the Court.

Because the Langills have not shown that a genuine issue of material fact

exists as to whether punitive damages are warranted, the Court also **GRANTS** Allstate's motion for summary judgment on this claim.

### IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment Or, In the Alternative, Partial Summary Judgment.

The Clerk is instructed to terminate this case.

**IT IS SO ORDERED**.

Dated: September 30, 2021

_Larry A. Burns_
Honorable Larry Alan Burns
United States District Judge